UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE PETRE,<br><br>                Plaintiff,<br><br><br>         v.<br><br>ALLIANCE HEALTHCARE<br>MANAGEMENT, LLC, d/b/a<br>ALLIANCE HEALTHCARE,<br>*et al.*<br><br><br>               Defendants. | Civil Action No.<br>1:20-cv-9002 (RBK/AMD)<br><br>Motion Return Date: September 8, 2020 |

---

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

---

McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10017
(212) 547-5421 (t)
(212) 547-4444 (f)
 *Attorneys for Defendants*

Of Counsel and On the Brief:

   Richard I. Scharlat, Esq.
   Laura McLane, Esq. (*pro hac vice* pending)

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................. 1

I.     BACKGROUND ................................................................................................... 2

       A.  Medicare Advantage Is Medicare Benefits, Not Private Insurance Benefits ............... 2

       B.  The MSP Statutes' Prohibitions Do Not Apply to Switching Between MA and
           OM……………………………………………………………………….......... 4

II.    PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT RELY ON THE ERRONEOUS
       PROPOSITION THAT SWITCHING FROM MEDICARE PART C ("MA") TO
       ANOTHER FORM OF MEDICARE VIOLATES THE LAW ....................................... 6

III.   LEGAL ARGUMENT ............................................................................................. 7

       A.  Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Fails to State a Claim for Retaliation
           Under CEPA, New Jersey Common Law, or the FCA…………………………….7

           1.     The Allegations in the Complaint Fail As a Matter of Law ..................... 7

                  (i)    Fed. R. Civ. P. 12(b)(6) ...................................................... 7

                  (ii)   Taking Plaintiff's Factual Allegations as True for the Purposes
                         of the Motion Exposes the Deficiency of Plaintiff's Claims ............. 8

           2.     Count I - Plaintiff Fails to State a Claim Under CEPA ........................... 9

                  (i)    CEPA Element 1 – Plaintiff Could Hold No Reasonable Belief That
                         Defendants Violated the MSP statutes, or Other Rule, Law, or Public
                         Policy .............................................................................. 9

                         a.   Plaintiff Admits Beneficiaries of MA are Medicare
                              Beneficiaries .......................................................... 10

                         b.   Plaintiff Admits MA is Part C of Medicare ......................... 10

                         c.   Plaintiff Admits That Defendants' Alleged
                              "Preference" for Patients with OM is Legal ........................ 10

                         d.   Plaintiff Includes Case Law in the Complaint That
                              Confirms She Could Not Reasonably Believe MA was
                              Private Insurance .................................................... 11

                  (ii)   CEPA Element 2 - Plaintiff Did Not Engage in Whistleblowing
                         Activity ........................................................................... 12

3.    Count II - Plaintiff Fails to State a Claim Under New Jersey
      Common Law................................................................................... 12

4.    Count III - Plaintiff Fails to State a Claim Under the FCA ..................... 14

V.    CONCLUSION.......................................................................................... 18

Table of Authorities

Page

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 7, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 7

*Blue Cross Blue Shield v. Shalala*, 995 F.2d 70 (5th Cir. 1993) ................................... 5

*Campion v. Northeast Utilities,* 598 F.Supp.2d 638 (M.D.Pa. 2009) ........................... 17

*DiFiore v. CSL Behring, LLC*, 879 F.3d 71 (3rd Cir. 2018) .................................... 15, 18

*Dookeran v. Mercy Hospital of Pittsburgh*, 281 F.3d 105 (3d Cir. 2002) ............... 14, 15

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005) ......................................................... 8

*Fanning v. U.S.*, 346 F.3d 386 (3d Cir. 2003) ............................................................ 4

*Hitesman v. Bridgeway, Inc.*, 218 N.J. 8 (2014) ................................................... 9, 12

*Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195 (Fla. Dist. Ct. App. 2015) ..................... 2

*Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176 (3d Cir. 2001) ....................... 17

*Jackson v. Marion County*, 66 F.3d 151 (7th Cir. 1995) ............................................. 9

*Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007) ......................................................... 8

*Klein v. University of Medicine and Dentistry of New Jersey*, 377 N.J. Super. 28 (App. Div.
2005) ...................................................................................................................... 9

*Krauss v. State Farm Mutual Auto. Ins.*, C.A. No. 03C-08-252 RRC, 2004 WL 2830889 (Del.
Super. Ct. Apr. 23, 2004) ......................................................................................... 8

*Papasan v. Allain,* 478 U.S. 265 (1986) .................................................................... 8

*Parilla v. IAP Worldwide Servs, VI, Inc.*, 368 F.3d 269 (3d Cir. 2004) ......................... 9

*Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980) .................................... 12, 13

*Portilla v. Riverview Post Acute Care Ctr.*, Civil No. 12-1842 (KSH), 2014 WL 1293882 (D.N.J.
Mar. 31, 2014) ...................................................................................................... 17

*Rodridguez v. Ready Pac Produce*, Civil No. 13-4634 (RBK/JS), 2014 WL 1875261 (D.N.J.
Aug. 5, 2014) ......................................................................................................... 7

*Rost v. Pfizer, Inc.*, No. 05CV10384 (GBD), 2009 WL 3097231 (S.D.N.Y. Sept. 24, 2009)...... 17

*Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3d 481 (7th Cir.1997) .................... 9

*Stalley ex Rel. U.S. v. Catholic Health Initiatives*, 458 F. Supp. 2d 958 (E.D. Ark. 2006).......... 11

*U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103 (3d Cir. 2007) ...................... 15

*U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497 (3d Cir. 2017)........................................ 14, 15

*U.S. v. Blue Cross and Blue Shield*, 726 F. Supp. 1517 (E.D. Mich. 1989)................................. 5

*U.S., ex. rel. LaPorte v. Premier Educ. Grp., L.P.*, No. Civ. 11-2323 RBK/AMD, 2014 WL
5449745 (D.N.J. Oct. 27, 2014) (Kugler, J.) .............................................................. 15, 16, 17, 18

*United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616 (1st Cir. 1996)................ 4

*Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607 (D.N.J. 2006) ................................................ 8

<u>Statutes</u>

26 U.S.C. § 5000(b) ................................................................................................................ 12

31 U.S.C. § 3730(h)……………………………………………………………………………...18

31 U.S.C. § 3730(h)(1) ........................................................................................................... 14

42 U.S.C. § 1395w-21 *et seq* ................................................................................................... 3

42 U.S.C. § 1395w–21(a)(1)……………………………………………………………………....4

42 U.S.C. § 1395w–21(c)(1).................................................................................................... 4

42 U.S.C. § 1395w–22(a)(1)(A) .............................................................................................. 4

42 U.S.C. § 1395w–27(a)(1).................................................................................................... 3

42 U.S.C. § 1395y(b) .................................................................................................... 4, 5, 11

42 U.S.C. 1395y(b)(1)(A)(v) ................................................................................................. 12

<u>Other Authorities</u>

Barbara S. Klees, Christian J. Wolfe, and Catherine A. Curtis, *BRIEF SUMMARIES of
MEDICARE & MEDICAID Title XVIII and Title XIX of The Social Security Act as of November
1, 2009*…………………………………………………………………………………………….3

H.R. Rep. No. 96-1167, at 352 (1980).......................................................................................... 4

<u>Preliminary Statement</u>

Defendants Alliance Healthcare Management, LLC, d/b/a Alliance Healthcare, Cooper Care, LLC, Riverfront Rehabilitation and Health Care Center ("Riverfront"), Atlas Healthcare, Esteffany Penafiel, Phillip Bak, and Sam Goldberger (together "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss plaintiff's complaint dated June 19, 2020[1] (the "Complaint") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). The Complaint should be dismissed because, even accepting the Complaint's allegations as true, an employee cannot state a retaliation claim by expressing purported concerns about legal activity which -- by force of her own allegations -- she could not have reasonably believed were unlawful. In a nutshell, as set forth below, plaintiff has pled herself out of Court.

Plaintiff's claims turn on a single theory: her employment was terminated because she conveyed to her immediate supervisor reservations about patients at defendant Riverfront Rehabilitation and Health Care Center ("Riverfront")[2], a skilled nursing facility, disenrolling from Medicare Advantage ("MA") and enrolling in original Medicare ("OM") between mid-March 2020 and early May 2020. Plaintiff contends that switching between MA and OM violates the Medicare Secondary Payer ("MSP") statutes because, she claims to believe, MA is "private insurance." Compl. ¶35(C).

_____

[1] The Complaint was originally filed in New Jersey Superior Court, Camden County, on June 19, 2020 and was removed to this Court on July 16, 2020. Dkt. 1.

[2] Riverfront is the d/b/a for defendant Cooper Care LLC.

Thus, the principal misrepresentation that underpins plaintiff's claims is that MA is "private insurance." As a matter of law, it is not.  MA is a Medicare program, under which the federal government contracts with private insurers (typically referred to as Medicare Advantage Organizations ("MAOs")) to provide <u>Medicare</u> benefits.  A review of plaintiff's own allegations in the Complaint confirm that she is well aware of this fact, or at the very least, any contrary belief she may purport to have is unreasonable.

The Complaint fails to state claims upon which relief can be granted as a matter of law for retaliation under: New Jersey's Conscientious Employee Protection Act ("CEPA") (Count I), New Jersey common law (Count II), and the False Claims Act ("FCA") (Count III).  As such, the Motion should be granted and the Complaint should be dismissed in its entirety, with prejudice.

I.     <u>Background</u>

A.     <u>Medicare Advantage Is Medicare Benefits, Not Private Insurance Benefits</u>

MA is simply one way in which beneficiaries can elect to access Medicare benefits. MA, formerly known as "Medicare+Choice," was created by the balanced Budget Act of 1997, which amended Title XVIII of the Social Security Act[3] to add MA as Medicare "Part C":

> <u>Medicare originally consisted of two parts</u>: Hospital Insurance (HI), also known as Part A, and Supplementary Medical Insurance (SMI), which in the past was also known simply as Part B. <u>Part A</u> helps pay for inpatient hospital, home health, skilled nursing facility, and hospice care.  Part A is provided free of premiums to most eligible people; certain otherwise ineligible people may voluntarily pay a monthly premium for coverage.  <u>Part B</u> helps pay for physician, outpatient hospital, home health, and other services.  To be covered by Part B, all eligible people must pay a monthly premium.  <u>A third part of Medicare, sometimes known as Part C, is the Medicare Advantage program</u>, which was established as the Medicare+Choice program by the Balanced Budget Act (BBA) of 1997 (Public

---

[3] Title XVIII is titled "Health Insurance For Aged and Disabled" and is known as the "Medicare Act".  *Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195, 199 (Fla. Dist. Ct. App. 2015).

Law 105-33) and subsequently renamed and modified by the Medicare Prescription Drug, Improvement, and Modernization Act (MMA) of 2003 (Public Law 108-173).

*See* Barbara S. Klees, Christian J. Wolfe, and Catherine A. Curtis, *BRIEF SUMMARIES of MEDICARE & MEDICAID Title XVIII and Title XIX of The Social Security Act as of November 1, 2009*, p. 6-7.[4]   Indeed, Part C of the Social Security Act's subchapter governing Medicare governs the MA program. *See* 42 U.S.C. § 1395w-21 *et seq.*

Under the MA program, the government contracts with private companies to enroll beneficiaries in an MA plan. The relevant statutory provision provides:

(a)  In General

1)      The <u>Secretary</u> shall not permit the election under section 1395w–21 of this title of a Medicare+Choice plan offered by a Medicare+Choice organization under this part, and no payment shall be made under section 1395w–23 of this title to an organization, <u>unless the Secretary has entered into a contract under this section with the organization with respect to the offering of such plan.</u> … Such contract <u>shall provide that the organization agrees to comply with the applicable requirements and standards of this part and the terms and conditions of payment as provided for in this part.</u>

42 U.S.C. § 1395w–27(a)(1) (emphasis added).

The Medicare statutes explicitly provide for beneficiaries to elect to receive Medicare benefits either under OM or MA:

(a) Choice of <u>medicare benefits</u> through Medicare+Choice plans

(1) In general

---

[4] https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MedicareProgramRatesStats/downloads/MedicareMedicaidSummaries2009.pdf

> Subject to the provisions of this section, each Medicare+Choice eligible individual (as defined in paragraph (3)) is entitled to elect to <u>receive benefits</u> (other than qualified prescription drug benefits) <u>under this subchapter</u>—
>
>> (A) through the original medicare fee-for-service program under parts A and B, <u>or</u>
>>
>> (B) through enrollment in a Medicare+Choice plan under this part [C]….

42 U.S.C. § 1395w–21(a)(1) (emphasis added); *see also* 42 U.S.C. § 1395w–21(c)(1) (requiring the Secretary of HHS to "establish a process through which elections described in [42 U.S.C. § 1395w–21(a)] are made and changed.").

The referenced subchapter is Title XVIII, which governs the Medicare program; thus, the "benefits" refer to Medicare benefits. In fact, statutory language explicitly establishes that "each Medicare+Choice (now MA) plan shall provide to members enrolled under this part [C]… benefits under the original medicare fee-for-service program option." 42 U.S.C. § 1395w–22(a)(1)(A).  MA provides Medicare beneficiaries the option to obtain the standard Medicare Part A and B benefits through the alternative MA framework, and the government pays MA plans to provide those benefit out of the Medicare Trust Fund.  Simply put, MA *is* Medicare coverage, funded by the government.  Any suggestion that MA is not Medicare is simply false.

B.    <u>The MSP Statutes' Prohibitions Do Not Apply to Switching Between MA and OM</u>

The MSP statutes, that plaintiff claims to believe were violated, were created to reduce health care costs and "preserve the fiscal integrity of the Medicare system." 42 U.S.C. § 1395y(b); *See Fanning v. U.S.*, 346 F.3d 386, 388 (3d Cir. 2003); H.R. Rep. No. 96-1167, at 352 (1980).  To do so, the MSP statutes endeavor to reduce Medicare disbursements in a very particular way: by "requiring Medicare beneficiaries to exhaust all available [ ] insurance coverage <u>before resorting to their Medicare coverage</u>." *See United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 618 (1st Cir. 1996) (emphasis added).  The MSP statutes

4

consider non-Medicare private health plans to be "primary" payers, while Medicare takes its place as the "secondary" payer, thereby being responsible only for paying amounts not covered by the primary, non-Medicare plan. *Blue Cross Blue Shield v. Shalala*, 995 F.2d 70, 71 (5th Cir. 1993) (stating that "[T]he MSP statute deals with situations in which a Medicare beneficiary has an alternate source of payments for health care services, such as a group health plan.").[5] Notably, in particular connection with plaintiff's claims, the MSP statutes have no application when Medicare recipients choose to switch between two types of Medicare programs; in both instances the beneficiary is receiving Medicare coverage. *Id.* at 72 (explaining that "[C]ongress designed the MSP statute to prevent group health plans from providing that the plan will be the secondary payer if Medicare coverage exists" (internal citation omitted)).  The concept of MSP comes into play only if the Medicare beneficiary has Medicare coverage plus some other private, non-Medicare coverage such as through their employment.  In that case, the employer coverage is primary, and the Medicare coverage is secondary whether the Medicare coverage is provided through MA or OM.  As such, disenrolling patients from MA and enrolling them in OM does not

_____

[5]  None of the MSP statutes proscribe disenrollment from one Medicare program and enrollment in another at all, and certainly not as part of the program to reduce federal healthcare costs. The MSP statutes include: (1) The Omnibus Budget Reconciliation Act of 1981 ("OBRA 81") (amending the Medicare Act to provide that, under certain circumstances, payments by Medicare for expenses related to care for end stage renal disease ("ESRD") would be "conditioned on reimbursement" by an employer group health plan.);  (2) The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") (amending the Medicare Act to make Medicare the secondary payer relative to employer group health plans for employed individuals and their spouses aged 65 to 69); (3) The Deficit Reduction Act of 1984 ("DEFRA") (making employer group health plans the primary payer and Medicare the secondary payer for spouses aged 65 to 69 of employed individuals covered under an employer group health plan); and (4) the Omnibus Budget Reconciliation Act of 1986 ("OBRA 86") (amending the Internal Revenue Code to encourage private health care coverage for the active disabled). *See* 42 U.S.C. § 1395y(b)(2); *U.S. v. Blue Cross and Blue Shield*, 726 F. Supp. 1517, 1519 (E.D. Mich. 1989).

implicate, let alone violate, the MSP statutes because both MA and OM provide Medicare coverage.

II.     Plaintiff's Allegations In the Complaint Rely on the Erroneous Proposition that <u>Switching From Medicare Part C ("MA") to Another Form of Medicare Violates the Law</u>

The Complaint contains a farrago of false and self-defeating allegations that attempt to brand defendants as villains for allegedly not accepting what plaintiff incorrectly terms "private insurance" at Riverfront.  Plaintiff worked at Riverfront as a Clinical Liaison from in or about October 2019 through early May 2020.  Compl. ¶11.  As a Clinical Liaison, plaintiff worked to place "patients" at Riverfront and "ensure insurance coverage for prospective applicants and/or patients seeking in-patient care."  Compl. ¶14.  Plaintiff claims that from "mid-March of 2020" she and unnamed "others" were "**directed**" by defendants to "convince prospective in-patient applicants to disenroll from a "private insurance plan." Compl. ¶¶21, 24 (emphasis in original). Plaintiff claims that this disenrollment caused "Medicare (a federal plan)" to become a "primary" payer when it should have been the "secondary" payer under the MSP statutes, allegedly resulting in "federal subsidized medical insurance" being depleted ***under false pretenses***…. Compl. ¶24 (emphasis in original).  But, the Complaint makes clear that the purportedly "private insurance" from which members were allegedly being disenrolled was, in fact, MA. *See e.g.* Compl. ¶35(C).

Plaintiff further alleges that this disenrollment of patients from MA, and subsequent enrollment in "Medicare (a federal plan)," improperly left "federal programs <u>on the hook</u> for full medical payments despite [*sic*] that … Medicare was not permitted to be treated as a primary payer" and thereby violated the MSP statutes. Compl. ¶¶25-28 (emphasis in original).  Plaintiff claims that her employment was terminated on or about May 5, 2020, which constituted unlawful retaliation against her under CEPA, New Jersey common law, and the FCA, because she

allegedly "expressly stated to Defendants' management prior to being told to resign and/or being terminated, she believed Defendants' action and directives to be 'fraudulent' and a form of 'fraud.'" Compl. ¶¶37, 39, 43-51. As detailed herein, plaintiff's theory of recovery under all three causes of action in the Complaint is contrived from a false premise that leaves her claims subject to dismissal, with prejudice, pursuant to Fed. R. Civ. P 12(b)(6).

III.   Legal Argument

    A.   Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Fails to State a Claim for Retaliation Under CEPA, New Jersey Common Law, or the FCA

        1.   The Allegations in the Complaint Fail As a Matter of Law

           (i)   Fed. R. Civ. P. 12(b)(6)

A complaint can only survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "… if it contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Rodriguez v. Ready Pac Produce*, Civil No. 13-4634 (RBK/JS), 2014 WL 1875261, at *2 (D.N.J. Aug. 5, 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The context of plaintiff's allegations in this case is this: (1) she claims to hold a belief about the legality of disenrolling from MA that is obviously wrong as a matter of law; and (2) she has included in her complaint allegations including statutes, cases, documents and facts that, on their face, demonstrate that it is implausible that she reasonably believes there is any connection between switching patients from MA to OM and a violation of the MSP statutes.

Moreover, the Complaint's vague and conclusory allegations about "fraud" and "illegality," emphatic as they are, are not factual claims that make plaintiff's causes of action

more plausible.  In this regard, this Court should not consider plaintiff's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal,* 556 U.S. at 678.  This is especially true in this case where plaintiff makes retaliation claims which are dependent on incorrect understandings and misstatements of the law because "[l]egal conclusions made in the guise of factual allegations are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd*., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005)) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss").  As detailed herein, plaintiff's' allegations do not meet the pleading standard of Fed. R. Civ. P. 12(b)(6) and the Motion should be granted.

    (ii)  Taking Plaintiff's Factual Allegations as True for the Purposes
        of the Motion Exposes the Deficiency of Plaintiff's Claims

   In this case, the *Iqbal* requirement of accepting plaintiff's claims in the Complaint "as true" is her undoing.  As demonstrated above, plaintiff cannot escape her own judicial admissions in the Complaint that confirm her knowledge of statutes, cases, and facts and render implausible any claim of her reasonable belief of misconduct resulting from patients switching from MA to OM as alleged:

> In a cause of action, pleadings are not mere ordinary admissions but are considered 'judicial admissions.' A judicial admission is a formal statement by a party or his or her attorney, in the court of judicial proceedings, which removes an admitted fact from the field of controversy.  …*Wigmore* states that 'a party may at any and all times invoke the language of his opponent's pleading on that particular issues as rendering certain facts indisputable.'

*Krauss v. State Farm Mutual Auto. Ins.*, C.A. No. 03C-08-252 RRC, 2004 WL 2830889, at *4 (Del. Super. Ct. Apr. 23, 2004).  That a plaintiff can plead herself out of court by force of her

own allegations in a complaint is well-settled. *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995); *See also Parilla v. IAP Worldwide Servs, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (citing *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3d 481, 483 (7th Cir.1997)) (noting the "well-settled rule that a party is bound by what it states in its pleadings"). Indeed, "… judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Soo Line R.R. Co.*, 125 F.3d at 483.  Here, plaintiff's own allegations make it clear that she knows MA is Medicare coverage, and, therefore, that switching between MA and OM is not a violation of the MSP statutes, or any other law, rule, or public policy.  Accordingly, the Motion should be granted on this basis as well.

      2.   <u>Count I - Plaintiff Fails to State a Claim Under CEPA</u>

To plead a *prima facie* case of retaliatory discharge under CEPA, a plaintiff must sufficiently allege four elements: (i) a reasonable belief that her employer's conduct was in violation of a law, rule, regulation, or public policy;  (ii) she performed a "whistle-blowing" activity as described in *N.J.S.A.* 34:19-3; (iii) an adverse employment action was taken against her by the employer; and (iv) a causal connection, a "nexus," between the whistle-blowing activity and the adverse employment action. *Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 29 (2014); *Klein v. University of Medicine and Dentistry of New Jersey*, 377 N.J. Super. 28, 38 (App. Div. 2005).

      (i)  CEPA Element 1 – Plaintiff Could Hold No Reasonable Belief That <u>Defendants Violated the MSP statutes, or Other Rule, Law, or Public Policy</u>

Plaintiff's ostensible basis for her stated belief that defendants acted improperly is that MA is a "private insurance" program.  To the contrary, as many allegations in the Complaint

confirm, plaintiff could not reasonably hold such a belief and must know that switching coverage between MA and OM is, in fact, lawful.

### a.   Plaintiff Admits Beneficiaries of MA are Medicare Beneficiaries

Plaintiff concedes that MA is itself a Medicare program, admitting that MA enrollees are "more than 30%" of current Medicare beneficiaries: "More than 20 million people in the United State are <u>enrolled in MAs</u> (private insurance plans), <u>which is more than 30% of the Medicare current beneficiaries</u>."  Compl. ¶35(C) (emphasis added).  If plaintiff knows that people enrolled in MA are "current beneficiaries" of Medicare, she cannot have a reasonable belief that MA is not Medicare.

### b.   Plaintiff Admits MA is Part C of Medicare

There is perhaps no more clear admission by plaintiff that she knows MA is Medicare coverage than her statement that MA is Medicare Part C coverage: "The only way someone can [*sic*] to participate in an MA is if they are ***already*** eligible for or enrolled in Medicare. An MA is often referred to as "Part C" coverage …." Compl. ¶35(D) (emphasis in original).  Plaintiff cannot allege that she knows MA is "Part C" of Medicare and simultaneously hold a reasonable belief that MA is not Medicare coverage.

### c.   Plaintiff Admits That Defendants' Alleged "Preference" for Patients with OM is Legal

Plaintiff admits that having a "preference" for patients with OM "is not illegal." Compl. ¶35(L).  This concession also confirms that plaintiff can hold no reasonable belief that defendants' practices were unlawful.

10

d.  Plaintiff Includes Case Law in the Complaint That Confirms
She Could Not Reasonably Believe MA was Private Insurance

Further undermining her claims, plaintiff cites to a case[6] in her Complaint that confirms

that she must understand that switching between MA to OM does not violate the MSP statutes.

Compl. ¶27.  Specifically, plaintiff relies on *Stalley ex Rel. U.S. v. Catholic Health Initiatives*,

458 F. Supp. 2d 958 (E.D. Ark. 2006) for the proposition that "[U]nder the MSP, 'Medicare [is]

the secondary payer for the medical services provided to Medicare beneficiaries whenever

payment is available from another primary payer.'" Compl. ¶27 (emphasis added).  Presumably,

plaintiff includes this quote to try to suggest that MA is a "primary payer," as distinct from a

federal source of Medicare funds, under the MSP statutes.  However, the balance of the same

section of the opinion confirms that this is false:

> Under the MSP, "Medicare [is] the secondary payer for medical services provided
> to Medicare beneficiaries whenever payment is available from another primary
> payer." … (internal citation omitted).  The statute provides a Medicare payment
> "may not be made ... with respect to any item or service to the extent that payment
> has been made or can reasonably be expected to be made under" a primary plan.
> 42 U.S.C. § 1395y(b)(2)(A). A "primary plan" includes "a group health plan or
> large group health plan," to the extent that clause (i) applies, and a workmen's
> compensation law or plan, an automobile or liability insurance policy or plan
> (including a self-insured plan) or no fault insurance, to the extent that clause (ii)
> applies.

*Stalley*, 458 F. Supp. at 960 (emphasis added).  *Stalley* thus confirms that a "primary plan" under

the MSP statutes includes only: (i) a group health plan or large group health plan; and (ii) a

worker's compensation plan, automobile policy of no-fault insurance –not a Medicare plan.  *Id.*

---

[6] Certain allegations in the Complaint are comprised of references to case law and read more like
a memorandum of law.  Defendants respond to these references herein within the context of the
Motion and reserve all rights in connection with the sufficiency of these "allegations."

"Group health plans" and "large group health plans" are defined as employer-based plans, not government plans. *See* 26 U.S.C. § 5000(b); 42 U.S.C. 1395y(b)(1)(A)(v). Therefore, a "primary plan" under the MSP statutes excludes Medicare plans.

Plaintiff should not be allowed to proceed on a CEPA claim, or other retaliation claims, when her own allegations make it objectively impossible for her to reasonably claim that she believes what she claims to believe. Accordingly, for these reasons, the Motion should be granted and plaintiff's cause of action against defendants for violations of CEPA should be dismissed with prejudice.

(ii) <u>CEPA Element 2 - Plaintiff Did Not Engage in Whistleblowing Activity</u>

As plead in the Complaint, plaintiff's internal disagreement with her immediate supervisor Penafiel about defendants' particular business practice does not rise to the level of "whistleblowing activity" under CEPA:

> CEPA is not intended to protect an employee who simply disagrees with the manner in which the hospital is operating one of its medical departments, provided the operation is in accordance with lawful and ethical mandates.

*Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 20 (N.J. 2014). Plaintiff's expression of concern about patients at Riverfront switching from MA to OM was nothing more than an internal disagreement about a practice that, even according to the allegations in the Complaint, was lawful. Count I should be dismissed with prejudice on this basis as well.

3. <u>Count II - Plaintiff Fails to State a Claim Under New Jersey Common Law</u>

New Jersey recognizes that an at-will employee can bring a cause of action against her employer if her employment is terminated for reasons "contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72 (1980)**.** In support of Count II of the Complaint, plaintiff's alleges only that: "[P]laintiff's termination for reasons set forth in this

Complaint and also for reasons set forth in Count I [CEPA] also constitute violations of New Jersey Common Laws (internal footnote admitted)." Compl. ¶ 47.

Accordingly, Count II does not meet the pleading requirements of Fed. R. Civ. P. 12(b)(6) for at least the following reasons.

First, plaintiff's allegations do not even recite the required element of a *Pierce* claim that she was terminated "contrary to a clear mandate of public policy."

Second, plaintiff merely incorporates the allegations that support her CEPA claim in support of her *Pierce* claim. Accordingly, Count II of the Complaint should be dismissed for all the same reasons that plaintiff's CEPA claims fail as a matter of law detailed herein.

Finally, to the extent that plaintiff alleges that the CMS memo titled "Memo to Long Term Care Facilities on Disenrollment Issues" (Compl. ¶ 31) is a "public policy" within the meaning of *Pierce*, plaintiff's claim that she was terminated for opposing defendants' alleged practice of switching patients from MA to OM fails as a matter of law. The guidance contained in the CMS Memo, to the extent it even sets an enforceable standard of conduct, applies only to long-term care ("LTC") facilities in connection with the technicalities of Medicare disenrollment under particular circumstances. As such, the CMS Memo does not set forth a "public policy" that, if violated, could support a CEPA claim. *Pierce*, 84 N.J. at 72 (finding that "not all such sources express a clear mandate of public policy … a code of ethics designed to serve only the interests of a profession or an administrative regulation concerned with technical matters probably would not be sufficient"). Accordingly, Count II of the Complaint should be dismissed with prejudice on this basis as well.

4.      Count III - Plaintiff Fails to State a Claim Under the FCA

Plaintiff's claim for retaliation under FCA (Count III) must be dismissed.  Plaintiff's

complaint lacks critical allegations that are required to state an FCA retaliation claim.  The

statute provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make
> that employee, contractor, or agent whole, if that employee, contractor, or agent is
> discharged, demoted, suspended, threatened, harassed, or in any other manner
> discriminated against in the terms and conditions of employment because of
> lawful acts done by the employee, contractor, agent or associated others in
> furtherance of an action under this section or other efforts to stop 1 or more
> violations of this subchapter.

31 U.S.C. § 3730(h)(1).

It is well-settled in the Third Circuit that a claim for retaliation under this statute fails

where a plaintiff's purported concerns would not give rise to a viable FCA case. *See*

*U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 508 (3d Cir. 2017) (affirming dismissal of

retaliation claim where Plaintiff's underlying reverse FCA claim was not viable); *Dookeran v.*

*Mercy Hospital of Pittsburgh*, 281 F.3d 105, 107 (3d Cir. 2002) ("We hold that the

whistleblower protections apply only to actions taken in furtherance of a *viable* False Claims Act

case. . . . Affirming summary judgment where there was no claim for payment within the

meaning of the FCA, and holding that "[b]ecause the facts of this case could not possibly support

a False Claims Act case, the whistleblower provisions did not apply.").

In this case, plaintiff's sole complaint is that defendants were switching beneficiaries of

MA Plans to Medicare Fee for Service coverage under OM.  Even accepting that allegation as

true, it is not a violation of law as discussed above.  Accordingly, neither plaintiff (even if she

were a *qui tam* relator) nor the government could possibly state a viable claim under the FCA

predicated on such alleged conduct.  Of course, plaintiff has not even brought a *qui tam* FCA

claim, her hypothetical theory of FCA liability against defendants is not viable, and her

14

retaliation claim must therefore be dismissed. *See Petras*, 857 F.3d at 508; *Dookeran*, 281 F.3d at 107. Indeed, it would be a bizarre result to permit a plaintiff to proceed with an FCA retaliation claim simply by mislabeling as "fraud" perfectly lawful conduct that could not possibly support an FCA case.

Even if plaintiff's underlying theory were viable (it is not), her complaint is devoid of allegations necessary to bring a retaliation claim, providing several additional, independent grounds for dismissal. A plaintiff bringing an FCA retaliation claim "must show (1) he engaged in protected conduct, (i.e., acts done in furtherance of an action under §3730) and (2) that he was discriminated against because of his protected conduct." *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 110-11 (3d Cir. 2007) (internal citations omitted); *U.S., ex. rel. LaPorte v. Premier Educ. Grp., L.P.*, No. Civ. 11-2323 RBK/AMD, 2014 WL 5449745, at *11-12 (D.N.J. Oct. 27, 2014) (Kugler, J.) (same).[7]  In turn, "[f]or a plaintiff to demonstrate that he was discriminated against because of conduct in furtherance of a False Claims Act suit, a plaintiff must show that: (1) his employer had knowledge he was engaged in protected conduct; and (2) that his employer's retaliation was motivated, at least in part, by the employee's engaging in protected conduct." *Hefner,* 495 F.3d at 110-11 (internal quotations and citations omitted). With respect to the latter point, a plaintiff must show that the protected conduct was the "but for" cause of the retaliation, and not merely a motivating factor. *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 78 (3rd Cir. 2018).

---

[7] Although the 2009 amendments to the FCA added language concerning efforts to stop FCA violations as protected conduct (*see Novartis*, *U.S. v. Novartis Pharm. Corp.*, Civ. No. 15-6547, 2020 WL 1891188, *6 (D.N.J. Apr. 16, 2020)), conclusory (and legally erroneous) allegations that conduct is "fraudulent" are not sufficient under any version of the statute.

Here, plaintiff has not adequately alleged that she was engaged in protected conduct; that defendants had knowledge she was engaged in purportedly protected conduct; or that such "conduct" was the "but for" cause of her alleged termination.  Her failure to meet her pleading burden on any one of these things requires dismissal of her FCA retaliation claim.  Here, she has failed to meet her burden on all of them.

First, plaintiff has not alleged that she engaged in protected conduct.  Plaintiff's complaint contains nothing more than opaque allegations about her purported reports about defendants' alleged conduct being "fraudulent."  Specifically, she alleges:

- She "had expressly stated" that she believed the alleged disenrollment practices were "illegal" (apparently to Defendant Penafiel, though it is unclear, as written, to whom she actually made this alleged statement) Compl. ¶ 29;

- "Plaintiff objected to resigning and continued to perform remote work …. Plaintiff had expressly stated to Defendants' management prior being told to resign and/or being terminated, she believed Defendants' actions to be 'fraudulent' and a form of 'fraud.'" Compl. ¶ 37; and

- Four days later, on May 9, Plaintiff alleges that she sent an e-mail claiming she did not resign, and setting forth her belief that she was terminated "in retaliation to" her unwillingness to disenroll patients, and that **"*I made it clear that I found this practice to be unethical, potentially <u>fraudulent</u>, and most likely not in the best interest of the patients…..*"** Compl. ¶ 40 (emphasis in original).

In addition to plaintiff's concession that the latter e-mail is after her purported "termination," and is therefore irrelevant to her retaliation claim, none of this conduct remotely approaches engaging in protected conduct as construed by the courts of the Third Circuit and elsewhere.  *See LaPorte*, No. Civ. 11-2323 RBK/AMD, 2014 WL 5449745 at *11-13 (holding that protected conduct included internal investigation and reporting of false claims, but that investigation of noncompliance with federal or state regulations is not enough; further, "[w]hile the conduct relators Amaya and Moody complained of to Hastain might support their present FCA claim, it is not enough to infer that by merely raising those concerns in the past, relators

Amaya and Moody "outlined the salient elements of the fraud described [in the FAC]," and were thus engaging in "protected conduct.") (citation omitted); *Campion v. Northeast Utilities,* 598 F.Supp.2d 638, 658 (M.D.Pa. 2009) ("[Plaintiff's] merely reporting his concern about mischarging the government to his supervisor does not suffice to establish" that he was engaged in protected activity); *Rost v. Pfizer, Inc.*, No. 05CV10384 (GBD), 2009 WL 3097231, at *6 (S.D.N.Y. Sept. 24, 2009) (granting summary judgment to defendants because plaintiff's "expressions of concern" to Pfizer about regulatory compliance were insufficient to constitute "protected activity"), *aff'd*, No. 09-4490-CV, 2010 WL 4628964 (2d Cir. Nov. 17, 2010).  Here, plaintiff offers a couple of conclusory allegations about defendants' practices being "illegal" and "potentially fraudulent."  *See e.g.* Compl. ¶¶ 35(L), 40.  She offers nothing else; she did not engage in any investigation or otherwise undertake any activity that would further an action for or stop a violation of the FCA.  Plaintiff's complaint fails to state a retaliation claim under the FCA and should be dismissed.

Second, plaintiff has not alleged, as she must, that defendants were on notice of her purportedly protected conduct.  "The requirement that employers have knowledge that an employee is engaged in 'protected conduct' ensures that § 3730(h) suits are only prosecuted where there has been actual retaliation."  *LaPorte*, No. Civ. 11-2323 RBK/AMD, 2014 WL 5449745 at *11 (citing *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 n. 7 (3d Cir. 2001)).  A plaintiff must allege that she put a defendant on notice of a "distinct possibility of FCA litigation."  *Id.* at *12 (citing *Hutchins*, 253 F.3d at 188); *Portilla v. Riverview Post Acute Care Ctr.*, Civil No. 12-1842 (KSH), 2014 WL 1293882, at *18 (D.N.J. Mar. 31, 2014) (granting motion to dismiss where the complaint did not show that plaintiff was engaging in conduct sufficient to put defendant on notice of the "distinct possibility" of FCA litigation) (citations

omitted).  This can occur when a plaintiff takes actions revealing an intent to report to or assist

the government in an FCA investigation, as this Court has held:

> Nowhere in the [Complaint] do relators Amaya or Moody suggest that they were
> investigating, initiating, testifying for, or assisting with a FCA action when they
> alerted Hastain to the alleged wrongdoing.  They do not allege that they
> mentioned a pending or future FCA action or threatened to report PEG's activities
> to the government in their communications with Hastain.

*LaPorte*, No. Civ. 11-2323 RBK/AMD, 2014 WL 5449745 at *13 (citations omitted).  Here,

again, plaintiff vaguely alleges that she told some defendants (without even clearly identifying

which ones) that the alleged disenrollment practices were "fraudulent."  Compl. ¶40. While the

premise for plaintiff's alleged reports is legally wrong, the case law makes clear that her reports

were, in any event, insufficient to provide defendants with the requisite notice that she was

engaging in protected conduct as a matter of law.

Finally, plaintiff has failed to plausibly allege that she was terminated "because of" of

engaging in protected conduct.  31 U.S.C. § 3730(h).  Where plaintiff neither engaged in

protected conduct nor provided sufficient notice to defendants as discussed above, it is

impossible for her to demonstrate "but for" causation here, as required.  *DiFiore*, 879 F.3d at 78;

*LaPorte*, No. Civ. 11-2323 RBK/AMD, 2014 WL 5449745 at *13, n. 17.  In other words, there

was nothing for defendants to "retaliate" against within the meaning of the FCA (or, as discussed

above, within the meaning of CEPA).  If anything, plaintiff's complaint suggests that she refused

to perform her job responsibilities, *see, e.g.*, Compl. ¶ 39, but the Court need not evaluate the

true reasons for her departure where she has wholly failed to allege the predicates for a

retaliation claim under the FCA.

V.      Conclusion

Plaintiff pled her claims right into a dismissal.  Plaintiff's allegations that defendants

retaliated against her because she expressed a reasonable belief that switching between MA and

OM was unlawful and fraudulent fail as a matter of law in light of the statutes, cases, documents and facts cited above, the lion's share of which are included in the Complaint.  Accordingly, the Motion should be granted and the Complaint should be dismissed in its entirety, with prejudice under Fed. R. Civ. P. 12(b)(6).

August 6, 2020                              Respectfully submitted,

                                           s/ Richard I. Scharlat

                                           Richard I. Scharlat, Esq.
                                           Laura McLane, Esq. (*pro hac vice* pending)
                                           McDERMOTT WILL & EMERY LLP
                                           340 Madison Avenue
                                           New York, New York 10017
                                           (212) 547-5421 (t)
                                           (212) 547-4444 (f)
                                             *Attorneys for Defendants*

19